UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES D. FORD,

        Petitioner,

vs.                    Case No.  2:07-cv-333-FtM-36SPC

SECRETARY, DEPARTMENT OF
CORRECTIONS; ATTORNEY GENERAL OF
THE STATE OF FLORIDA,

        Respondents.

_____

**OPINION AND ORDER**
**<u>PURSUANT TO LIMITED REMAND</u>**

**I. Status**

**A. Procedural History**

Court-appointed counsel Ryan Thomas Truskoski filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 11, 2007 (Doc. #15, Petition), on behalf of Petitioner James D. Ford ("Petitioner" or "Ford").  The Petition challenged Ford's June 3, 1999, state court judgment of conviction for sexual battery with a firearm, aggravated child abuse, and two counts of first degree murder, which was entered in the Twentieth Judicial Circuit, Charlotte County, Florida (case number 97-351-CF) for which Petitioner was sentenced to death.  Petition at 1.  On September 17, 2009, the Court issued an Opinion and Order that dismissed the Petition as untimely pursuant to 28 U.S.C. § 2244 (Doc. #23, the "September 2009 Order").  On October 30, 2009, the United States

Court of Appeals for the Eleventh Circuit denied Petitioner a certificate of appealability in case number 09-14829 (Doc. #29). Petitioner filed a petition for writ of *certiorari* with the United State Supreme Court. On June 21, 2010, the Supreme Court, in case number 09-7493, vacated the Eleventh Circuit's denial of a certificate of appealability and remanded "for further consideration in light of *Holland v. Florida*, 560 U.S. ___, 130 S.Ct. 2549 (2010)." *See* Eleventh Circuit's November 24, 2010 Order (Doc. #38). Accordingly, the Eleventh Circuit remanded this case back to this Court for the "limited purpose of conducting further proceedings and fact-finding - - including, if necessary, an evidentiary hearing - - consistent with the opinion and judgment of the Supreme Court in *Holland*. *Id*. at 2. To address this issue, the Court issued a Show Cause Order to Petitioner pursuant to the limited remand. *See* December 8, 2010 (Doc. #41). In particular, the Court directed newly appointed counsel, Martin J. McClain, to identify whether "sufficient facts exist which would entitle Petitioner to equitable tolling." *Id*. Additionally, Petitioner was ordered to submit any evidence in support of his factual allegations that support the doctrine of equitable tolling. *Id*.

**B. Petitioner's Response**

After being granted an extension of time, Petitioner filed a "Response to This Court's Order to Show Cause" on April 11, 2011

(Doc. #44, "Petitioner's Response"). Petitioner did not attach any exhibits in connection with his Response. *See generally Id.*

Petitioner concedes that Ford's conviction became final on May 28, 2002 and, under the anniversary triggering date, Ford had until May 28, 2003, to file a timely Petition. Petitioner's Response at 2, ¶2. However, contrary to Petitioner's previous recognition that the Petition is untimely,[1] Petitioner now contends that under the Supreme Court's recent decision in *Wall v. Kholi*, ___ U.S. ___, 131 S.Ct. 1278 (2011), the instant Petition should be deemed timely filed. *Id*. at 2-7. In particular, Petitioner cites the *Wall* decision for the proposition that a formal motion for post-conviction relief does not need to be filed to toll the federal limitations period. *See generally Id.* Consequently, Petitioner argues that the Court's finding in its September 2009 Order, that the federal limitations was not tolled until May 28, 2003, when Petitioner, represented by counsel, filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, is in error. *Id.* Instead, relying upon the *Wall* decision, Petitioner proposes that Florida's statutorily mandated "collateral review process" tolls the federal limitations period, as opposed to the formal filing of an application for post-conviction relief.[2]

---

[1]*See* Petitioner's Response to Motion to Dismiss (Doc. #17).

[2]Petitioner, however, does not identify a specific triggering event during the "collateral review process." Instead, Petitioner
(continued...)

-3-

In the alternative, Petitioner argues that, if the Court finds that the Petition remains untimely, Ford should be entitled to equitable tolling. Petitioner requests an evidentiary hearing to the extent that Respondent disputes "Ford's mental impairments" and "to explore" Truskoski's decision to file a motion for appointment of counsel prior to his filing the instant Petition. *Id*. at 20, ¶28.

### C.  Respondent's Response

On June 8, 2011, after being granted an extension of time, Respondent filed a "Response to Petitioner's Response to This Court's Order to Show Cause of December 8, 2010" (Doc. #47, "Respondent's Reply"). Initially, Respondent objects to Petitioner's newly raised claim that the Petition is timely filed. Respondent's Reply at 4-7. Respondent also contends that Petitioner is not entitled to an evidentiary hearing regarding Mr. Truskoski's motives for filing a motion for appointment of counsel, because Petitioner's claims are "merely conclusory allegations unsupported by specifics." *Id*. at 15 (citations omitted). Additionally, Respondent submits that Petitioner has not demonstrated either extraordinary circumstances or reasonable diligence to be entitled to equitable tolling. *Id*. at 7-14.

---

[2](...continued)
appears to suggest that unless a petitioner formally waives collateral review, the issuance of mandate by the Florida Supreme Court automatically tolls the federal limitations period in every death case. Petitioner's Response at 3, n. 3.

Consequently, Respondent seeks an order affirming dismissal of the Petition as untimely. *Id.* at 15.

## II. Applicable Law and Findings of Fact

### A. Issues Before the Court

At the outset the Court must first determine what issues are properly before it. The Eleventh Circuit's November 24, 2010 Order, makes clear that this Court is limited to considering whether Petitioner is entitled to equitable tolling under the standard recently recognized by the United States Supreme Court in *Holland v. Florida*, 130 S. Ct. 3549. Where the Eleventh Circuit issues a limited remand, "the trial court is restricted in the range of issues it may consider on remand." *U.S. v. Davis*, 329 F.3d 1250, 1252 (11th Cir. 2003). Indeed, "[a] vacation of judgment for consideration in light of a particular decision is much more limited in nature than a general vacation by an appellate court, and its effect is not to nullify all prior proceedings." *Id*. (internal quotations and citations omitted). As noted by the Supreme Court, when a district court acts under an appellate court's mandate, the district court

> cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.

*U.S. v. M.C.C. of Florida, Inc.*, 967 F.2d 1559, 1562 (11th Cir. 1992)(quoting *Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)).

As a result, the Court need not and, indeed, may not address Petitioner's argument that the Petition is timely filed because federal statutory tolling is triggered by the "collateral review process" under *Wall v. Kholi*, 131 S. Ct. 1278. Instead, the Court's prior rulings that the Petition is untimely and that the filing of a motion for appointment of counsel does not toll the federal limitations period, as well as the Court's factual determinations as to when Petitioner's conviction became final and the date that Petitioner filed his first post-conviction motion to toll the federal limitation period, remain the law of the case; and, these findings will not be revisited by the Court in this Order. Thus, the only issues properly before the Court are: (1) whether Petitioner has demonstrated extraordinary circumstances; and, (2) whether Petitioner has shown reasonable diligence.

**B. Evidentiary Hearing**

The Court has carefully reviewed the parties' respective pleadings, as well as the record, and concludes no evidentiary proceedings are required on the issue of equitable tolling. *See Schriro v. Landrigan*, 550 U.S. 465, 474-475 (2007). Petitioner, who bears the burden of establishing the need for an evidentiary hearing, has not come forward with any specific facts that would entitle him to equitable tolling. *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). "An evidentiary hearing may be necessary where the material facts are in dispute,

but a petitioner is not entitled to an evidentiary hearing where his claims are merely conclusory allegations unsupported by specifics." *San Martin v. McNeil*, 633 F.3d 1257, 1271 (11th Cir. 2011).

As more fully explained *infra*, Petitioner does not proffer any evidence, but rather offers only speculation, about Mr. Truskoski's motive behind his filing of a motion for appointment of counsel in this Court. In order to be entitled to an evidentiary hearing, "[t]he allegations must be factual and specific, not conclusory. Conclusory allegations are not enough to warrant a hearing." *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d at 1061.

Here, Petitioner offers no documentation in support of his Response and does not offer any specific facts that would require an evidentiary hearing. *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 763 (11th Cir. 2010). Instead, Petitioner requests an evidentiary hearing "to explore" his conjecture that Mr. Truskoski was self-interested. Because Petitioner offers only speculations as to Mr. Truskoski's alleged motives, the Court finds that an evidentiary hearing is not warranted, and denies Petitioner's request for the same. *Schriro*, 550 U.S. at 475.

### C. The *Holland* Decision

Prior to the United States Supreme Court decision in *Holland,* the law in the Eleventh Circuit held that absent a showing of bad faith, dishonesty, mental impairment, or divided loyalty, "attorney

negligence could never serve as a basis for equitable tolling."
*Poveromo v. Fla. Dep't of Corr.*, No. 11-10985, 2011 WL 5965566
(11th Cir. Nov, 29, 2011)(recognizing *Holland* rejected Eleventh
Circuit's standard for finding equitable tolling based upon an
attorney's misconduct). For the first time, the United States
Supreme Court in *Holland* conclusively determined that "the
timeliness provision in the federal habeas corpus statute is
subject to equitable tolling." *Id.*, 130 S. Ct. at 2560. The
*Holland* Court also reaffirmed that a petitioner is "entitled to
equitable tolling" only if he can demonstrate "(1) that he has been
pursuing his rights diligently, and (2) that some extraordinary
circumstance stood in his way" that prevented the timely filing.
*Id.* at 2562-63. However, the *Holland* Court criticized the Eleventh
Circuit's attorney negligence threshold as "too rigid." *Id.* In
particular, the *Holland* Court opined that the Eleventh Circuit's
rule "is difficult to reconcile with more general equitable
principles in that it fails to recognize that, at least sometimes,
professional misconduct that fails to meet the Eleventh Circuit's
standard could nonetheless amount to egregious behavior and create
extraordinary circumstances that warrants equitable tolling." *Id.*
at 2563. The Supreme Court offered the following guidance with
respect to the "extraordinary circumstances" prong:

> We have previously held that "a garden variety claim of
> excusable neglect," such as a simple "miscalculation"
> that leads a lawyer to miss a filing deadline, does not
> warrant equitable tolling. But the case before us does

not involve, and we are not considering, a "garden variety claim" of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct. And, as we have said, although the circumstances of a case must be "extraordinary" before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case.

The record facts that we have set forth in Part I of this opinion suggest that this case may well be an "extraordinary" instance in which petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect." To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired-two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Id.* at ___, 130 S.Ct. at 2564 (internal citations omitted).

With regard to the diligence prong, the Supreme Court clarified that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* at 2565. The *Holland* court in finding petitioner exercised reasonable diligence pointed out that:

Holland not only wrote his attorney numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks,

and the Florida Bar Association to have [his counsel] –
the central impediment to the pursuit of his legal
remedy- removed from his case.  And, the **very day** that
Holland discovered that his AEDPA clock had expired due
to Collins' failings, Holland prepared his own habeas
petition pro se and promptly filed it with the District
Court.

*Id.* (emphasis in original).

### D. Facts Relevant to Instant Case

Based upon the record as supplemented by Petitioner in his
Response, the following facts are relevant to the issues before the
Court.  On January 11, 2002, the Office of the Collateral Regional
Counsel for the Southern Region ("CCRC-South"), who was assigned to
represent Ford after mandate on the denial of Ford's direct appeal,
filed a "Motion to Withdraw," stating that "CCRC-South cannot
provide effective representation to the Defendant at this time due
to its current caseload and staff shortages."  On February 8, 2002,
an order issued granting CCRC's motion and appointing Robert Burr
to represent Ford.  On May 28, 2002, the United States Supreme
Court denied Petitioner *certiorari* on his direct appeal.  *Ford v.
Florida*, 535 U.S. 1103 (2002).  Thus, on this date, Petitioner's
conviction and sentence became final and the federal limitations
period began to run.

On June 17, 2002, a hearing was held in Ford's capital case,
and Mr. Burr was removed as Ford's counsel.  On June 24, 2002, Mr.
Frederick Mercurio was appointed to represent Ford.  Mr. Mercurio
entered a notice of appearance on July 1, 2002.  The circuit court

held hearings in connection with Ford's case on the following dates: September 9, 2002, December 9, 2002, March 10, 2003, and May 12, 2003.[3]

On May 28, 2003 -- on the one-year anniversary date of the United States Supreme Court denying certiorari - - Mr. Mercurio filed a motion for post-conviction relief on behalf of Petitioner with the State court.[4] The post-conviction court held an evidentiary hearing on the motion on May 12, 2004. On July 12, 2004, the post-conviction court denied Ford relief on his post-conviction motion, and Ford filed a timely appeal to the Florida Supreme Court. During the pendency of the appeal, Ford filed a *pro se* motion with the Florida Supreme Court, in which Ford expressed his dissatisfaction with Mr. Mercurio and sought appointment of new counsel.[5] On November 4, 2005, the Florida Supreme Court relinquished jurisdiction to the circuit court to appoint new counsel for Ford.

---

[3]Other than providing the chronology of these hearings, Petitioner does not provide the Court with any information as to what, if anything, transpired during these hearings.

[4]Petitioner does not address why Mr. Mercurio, who was appointed prior to Mr. Truskoski, inexplicably permitted the full 365 days of the federal limitation period to run before filing a post-conviction motion. *See generally* Petitioner's Response.

[5]As noted earlier, no exhibits were attached to Petitioner's Response. Respondent does not contest the characterization of the content of Petitioner's letter or the authenticity of the quoted portions of the various correspondence set forth *infra*. Consequently, the Court accepts them as accurate.

On January 5, 2006, the circuit court appointed Mr. Truskoski as registry counsel. Thus, at the time of Mr. Truskoski's appointment, the entirety of the one-year limitations period had already elapsed. Mr. Truskoski filed a notice of appearance in the Florida Supreme Court on January 12, 2006. On March 24, 2006, the Florida Supreme Court entered an order directing Mr. Truskoski to file a reply brief on Ford's behalf by May 29, 2006, and further advised counsel that "the briefs already filed in the above styled case will be considered absent a motion from counsel." Petitioner's Response at 8, n.8. On March 30, 2006, Mr. Truskoski wrote Ford as follows:

> I have received the court file from your trial attorney. I have begun to review your case. The Florida Supreme Court just issued an order which I have enclosed herein. The court has set the due date for the reply brief for May 29, 2006. Is there anything wrong with the initial brief filed by your previous attorney? Are there any errors in it that you want me to address? What are your thoughts on this? Please let me know.

*Id*. at 8-9, ¶11. Ford responded back in a letter dated April 12, 2006, "detailing his thoughts which included his displeasure with the initial brief filed by Mr. Mercurio, his desire for Mr. Truskoski to raise a mental retardation claim, and the errors he saw in both the brief and in his case." *Id*. at 9, ¶12.

Mr. Truskoski filed a reply brief on behalf of Ford with the Florida Supreme Court on May 18, 2006, prior to his receipt of Petitioner's April 12, 2006 letter. In particular, Mr. Truskoski responded as follows to Ford's April 12, 2006 letter:

I have received your letter dated April 12, 2006, today,
which is May 18, 2006, I do not know why there was such
a long delay.  The post mark on the envelope says May 13,
2006.  As you will have realized by now, I already mailed
and completed the reply brief in your case before I got
your letter.  I know that you were not satisfied with Mr.
Mercurio's brief.  However, I thoroughly reviewed and
analyzed your case and he did make the appropriate
arguments.  I did not find any grounds to ask the court
to permit me to file a new initial brief.  I cannot raise
the fact that Mr. Mercurio forced you to testify how he
wanted you to, and about dropping the mental retardation
claim, for the first time on appeal.  I am not permitted
to do this.  The court only looks at the record and the
transcripts from the lower court.  Such issues must be
first raised in the trial court.  This cannot be done at
this point.  I know you had problems with Mr. Mercurio.
However, the brief he filed was good.  At this point we
are just waiting for a decision.  It will be a long wait.
I do not know exactly when they will rule, but I will let
you know as soon as they do.

Petitioner's Response at 9, ¶12.

Thereafter, Ford sent a *pro se* pleading, dated June 6, 2006,

entitled "Motion to Consider and Seek Mercy for Fairness of an

Emergency Nature" to the Florida Supreme Court.  Attaching copies

of Mr. Truskoski's March 30 and May 19 letters to his pleading,

Ford wrote:

Ford now comes to the heart of this Honorable Court on
both hands and knees and ask that this court please once
again grant him a ninety (90) day continuance just for
the sake of providing his attorney the proper opportunity
to raise the desired meritorious issues in which the
defendant, Mr. Ford, wish [sic] to raise before this
Honorable Court.

*Id*. at 10, ¶13.  On August 22, 2006, after directing Mr. Truskoski

to respond, the Florida Supreme Court entered an order stating

"Appellant's *pro se* motion to consider and seek mercy for fairness of an emergency nature is hereby denied." *Id*.

On October 30, 2006, the Florida Supreme Court heard oral argument on Ford's appeal, and the Court issued an opinion denying Ford relief on April 12, 2007. On April 16, 2007, Truskoski filed a "Motion for Appointment of Counsel for Representation in Federal Habeas Corpus Proceedings in a Capital Case" in the Tampa Division of this Court. See Doc. #1. The Tampa Division transferred the file to this Court, and this matter was docketed as a "miscellaneous case" until Petitioner completed an Affidavit of Indigence, in order for the Court to determine whether Petitioner was entitled to appointment of counsel pursuant to 18 U.S.C. § 3599. See Doc. #5. On May 7, 2007, mandate issued from the Florida Supreme Court's denial of Ford's appeal on his Rule 3.851 motion.

On May 21, 2007, Petitioner filed an affidavit of indigence; and, this matter was assigned the above captioned civil case number. *See* Docs. ##7, 8. On May 30, 2007, the Court granted Petitioner *in forma pauperis* status, and granted counsel's motion for appointment in this matter. *See* Docs. ##11, 12. On June 11, 2007, Petitioner filed the instant Petition in this Court. *See* Doc. #15.

Based upon these facts, Petitioner alleges that the following two extraordinary circumstances prevented him from timely filing

his Petition: (1) Ford's previous counsel, Mr. Truskoski, had an "actual conflict of interest" as evidenced by Mr. Truskoski filing a motion for appointment of counsel before filing a federal petition on behalf of Petitioner; and (2) this Court "failed to promptly rule" on Mr. Truskoski's motion for appointment. *Id*. at 17-18. As diligence, Petitioner points out that, as demonstrated by the record, Ford is "learning disabled."[6] *Id*. at 17. Consequently, Petitioner suggests that Ford "reasonably relied" upon Florida law to provide him "collateral representation by a qualified attorney." *Id*. Additionally, Petitioner references correspondence that Ford sent to the Florida Supreme Court and to

---

[6]In affirming Ford's sentence of death, the Florida Supreme Court held:

> In the present case, after the defense experts presented proof that Ford (who was thirty-eight at the time of sentencing) is a slow learner and has limited capabilities, the trial court held that the following proposed nonstatutory factors were "proven" (i.e., the court held that the following proposed factors are mitigating in nature and are present in the instant case): (a) The defendant is learning disabled; and (b) the defendant has a developmental age of fourteen. However, based on extensive testimony by other witnesses showing that Ford functions well as a mature adult, the court concluded that these factors are not mitigating under the facts in the case at hand and accorded them no weight. Our review of the record shows that this ruling is supported by competent substantial evidence. We find no error.

*Ford v. State*, 802 So.2d 1121, 1135 (Fla. 2001).

Mr. Truskoski during the State proceedings, which Petitioner claims evidences his diligence. *Id*. at 8-10.

**1. Extraordinary Circumstances**

**a.  Mr. Truskoski's Divided Loyalty**

Petitioner contends that Mr. Truskoski "had an actual conflict of interest, *i.e.* divided loyalty which warrants equitable tolling." Petitioner's Response at 19.  Petitioner argues that because "Mr. Truskoski was statutorily and contractually obligated to provide Mr. Ford with representation before this Court," *id*. at 13, ¶16, his motion seeking appointment of counsel "was made to ensure that Mr. Truskoski would be paid by this Court for his work in preparing a federal habeas petition challenging Mr. Ford's conviction and sentence of death." *Id*. at 11, ¶14.  Consequently, Petitioner submits that Mr. Truskoski's filing of a motion to be appointed counsel, prior to counsel filing the Petition on behalf of his client, evidences that Mr. Truskoski "without notifying Mr. Ford, chose to put his own monetary interests first" and constitutes the type of misconduct by counsel that warrants equitable tolling. *Id*. at  18, ¶25.

Other than Petitioner's own speculation, Petitioner offers no proof that Mr. Truskoski had such an ulterior motive in filing a motion for appointment of counsel in this Court.  In fact, the current record demonstrates that Mr. Truskoski previously represented to this Court that he understood that (1) the filing of

his motion for appointment of counsel would toll the federal limitations period; and, (2) he was prohibited from filing the Petition in this Court until he was appointed as counsel in this matter. In particular, in response to Respondent's motion to dismiss the Petition as untimely, Mr. Truskoski stated:

> 5. Within the contexts of other statutes of limitations, courts have ruled that equitable tolling may be appropriate if a motion for appointment of counsel is pending. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 1725-26, 80 L.Ed.2d 196 (1984); *Browning v. AT&T Paradyne*, 120 F.3d 222, 227 (11th Cir. 1997); *Bryant v. United States Department of Agriculture*, 967 F.2d 501, 504 (11th Cir. 1992); *Harris v. Walgreens Distribution Center*, 456 F.2d 588 (6th Cir. 1972). The same rationale applies with equal force herein.
>
> 6. Pursuant to Fla. Stat. § 27.711(2), the undersigned court-appointed collateral counsel was required to represent the petitioner in this federal proceeding. The undersigned was not authorized to file a habeas action until this court appointed him to this case.

Petitioner's Response to Motion to Dismiss (Doc. #17) at 2-3. Mr. Truskoski further averred that it was his understanding that "[i]t was not clear that the undersigned counsel was even going to be appointed to this case." *Id*. at 3, ¶8. In fact, Mr. Truskoski reiterated his understanding that "[i]n sum, the order granting the appointment of counsel was a mandatory prerequisite to the filing of the instant habeas petition and taking only 12 days to file the petition is due diligence in this regard." *Id*., ¶10.

Thus, Mr. Truskoski previously stated in a pleading filed in this Court pursuant to Fed. R. Civ. P. 11 that his motives for

filing the motion for appointment in this Court were because he understood: (1) that the filing of the motion would toll the federal limitations period; and, (2) that he could not file the Petition prior to being appointed by this Court as Ford's counsel. Mr. Truskoski's understanding on these issues was incorrect, and arguably constituted negligence on Mr. Truskoski's part. However, the *Holland* decision did not disturb the general principle that simple negligence is insufficient to constitute an extraordinary circumstance to entitle a petitioner to equitable tolling. *Holland*, 130 S. Ct. at 2564 (recognizing that "'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling.")(internal quotations and citations omitted). *See also*, *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)(finding that counsel's mistaken belief that seeking certiorari from the denial of a state post-conviction motion tolled the federal statute of limitations period did not constitute extraordinary circumstances).

There is simply no evidence that Mr. Truskoski ever misrepresented the status of this case to Ford. At most, Petitioner faults counsel for his alleged shortcomings in failing to include the various substantive issues Ford requested in his

reply to the Florida Supreme Court.[7]  Even if any of the issues had

merit, Petitioner does not identify how counsel's shortcomings in

failing to raise potentially meritorious issues resulted in a delay

in the filing of the instant Petition.

Additionally, Petitioner faults Mr. Truskoski for not

physically visiting Ford and/or discussing his case with him.

Petitioner's Response at 9, n. 9.  Again, the Court cannot conceive

of how Mr. Truskoski's failure to visit with Ford affected the

filing of the instant Petition.  *See Chavez v. Sec'y, Fla. Dep't of*

---

[7]Petitioner points out that Ford expressed his desire "to raise a mental retardation claim." Petitioner's Response at 9. Notably, the Florida Supreme Court in its order denying Ford's appeal of the post-conviction motion recognized that Ford knowingly and voluntarily waived this claim.

> As noted in the order denying relief, defense counsel either did not obtain expert witnesses regarding mental retardation or they were unavailable. However, after the trial court explained that it would dismiss this claim without prejudice and reconsider it should Ford renew the issue at a later time, he stated at the evidentiary hearing that he no longer wished to pursue this claim and was waiving it. The court conducted a lengthy colloquy with Ford on the topic and concluded that he knowingly and intelligently waived this claim.

> In addition, the State introduced testimony and medical records related to Ford's mental status. Ford's trial attorney, Paul Sullivan, testified that all mental retardation testing done prior to trial indicated that Ford did not suffer from any retardation. In addition, the records introduced indicated that Ford had a full scale IQ of 88. According to the trial court in its order denying relief, reviewing those records confirmed that Ford was warranted in waiving this claim.

*Ford v. State*, 955 So.2d 550, 552 n. 4 (Fla. 2007).

*Corr.*, 647 F.3d 1057, (11th Cir. 2011). Consequently, the Court finds Petitioner has not demonstrated that Mr. Truskoski's filing of a motion for appointment of counsel, or any conduct on behalf of Mr. Truskoski, constituted the type of attorney misconduct to warrant extraordinary circumstances as required By *Holland*.

**b.    The Court's Delay**[8]

Petitioner seeks to assign fault to the Court for its alleged delay in failing to grant Mr. Truskoski's motion for appointment of counsel for 44 days after it was filed, "even though [the] United States Supreme Court is quite clear that Mr. Ford was entitled to the appointment of counsel, *McFarland v. Scott*, 512 U.S. 849 (1994)." Petitioner's Response at 15, ¶18. Petitioner surmises that had the Court immediately ruled on Mr. Truskoski's motion, and had Mr. Truskoski filed the Petition twelve days after his appointment, then the instant Petition would be timely. *Id.*, n. 16.

Petitioner's argument misstates the record that was before the Court. The record reveals the following. On April 16, 2007, counsel for Petitioner filed a "Motion for Appointment of Counsel for Representation in Federal Habeas Corpus Proceedings in a Capital Case" in the Tampa Division of this Court. <u>See</u> Doc. #1.

---

[8]Based upon the limited remand, it is not clear whether the Court need address this claim as this claim does not involve the issues of attorney misconduct raised by the *Holland* decision. In an abundance of caution, the Court nonetheless will address the issue.

The Tampa Division then transferred the file to this Court. Doc. #3. Upon receipt in this Division on April 18, 2007, this matter was docketed by the Clerk as a "miscellaneous case" and assigned to Judge John E. Steele and Magistrate Judge Douglas N. Frazier at case number 2:07-mc-22-FtM-29DNF. *Id.* On April 24, 2007, the magistrate judge, noting that Petitioner had not submitted a completed Affidavit of Indigence in order for the Court to determine whether Petitioner was entitled to appointment of counsel pursuant to 18 U.S.C. § 3599, directed Petitioner to complete an Affidavit. Doc. #5. Additionally, upon noting that Mr. Truskoski's "name is not included on the Criminal Justice Act Panel attorney list for the Middle District of Florida," *id.* at 2, the magistrate judge directed Mr. Truskoski to "submit his qualifications" to the Court. *Id.* On May 6, 2007, Mr. Truskoski filed a supplement to his motion. Doc. #6. However, Petitioner did not file an affidavit of indigence until May 21, 2007. Doc. #7.

On May 24, 2007, the clerk reassigned this case from the miscellaneous case docket to the civil case docket to Judge Marcia Morales Howard and Magistrate Judge Sheri Polster Chappell. Doc. #8. On May 30, 2007,[9] after reviewing Petitioner's affidavit of indigency and Mr. Truskoski's supplement, the magistrate judge granted Petitioner *in forma pauperis* status and granted counsel's

---

[9]Notably, the Court was closed on Saturday, May 26, 2007, Sunday, May 27, 2007 and Monday, May 28, 2007 for Memorial Day.

motion for appointment in this matter.  Docs. ##11, 12.  Twelve days later, the instant Petition was filed.

Admittedly, a death penalty petitioner is entitled to the appointment of counsel pursuant to 18 U.S.C. § 3599 (a), but only if the Court determines that the petitioner is indigent. *McFarland v. Scott*, 512 U.S. 849 (1994).[10]  Petitioner did not advise the Court of his indigency status until May 21, 2007, which was 14 days <u>after</u> mandate from the Florida Supreme Court had issued and the federal limitations period had expired.  Additionally, at no time did counsel or Petitioner make this Court aware of the timeliness issues concerning this matter.  Consequently, Petitioner cannot assign blame to the Court in failing to expeditiously act where Petitioner exercised no care in advising the Court of exigent circumstances. *See e.g. Drew v. Dep't of Corr.*, 297 F.3d 1278, 1288 (11th Cir. 2002)(recognizing that delay in receipt of court order may constitute extraordinary circumstances if petitioner shows he attempted to ascertain the status of the order);*Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011)(pointing out that it is not the responsibility of the district court to "do a petitioner's work" in the prosecution of his habeas claim).  Consequently, the Court finds that Petitioner's claim of

---

[10]<u>McFarland</u> addresses the right to appointment of counsel under 21 U.S.C. Section 848(q)(4).  Section 848(q) was repealed on March 9, 2006, and replaced with 18 U.S.C. Section 3599(a).

extraordinary circumstances predicated upon the Court's delay   is
without merit.

### 2. Due Diligence

Petitioner identifies correspondence Petitioner wrote to Mr.
Truskoski and the Florida Supreme Court during the Rule 3.851
proceedings about his concerns with his case.  However, Petitioner
indicates that the correspondence addressed Ford's concerns with
substantive matters, and does not allege any inactivity on behalf
of Truskoski, or any of Ford's prior counsel.  Further, Petitioner
does not allege that he ever made any inquiries about the federal
habeas time-bar issue or attempted to investigate federal habeas
law.  In fact, Petitioner does not aver that Ford ever expressed a
concern about the timeliness issue.

The evidence reveals that Truskoski advised Ford soon after he
was appointed to his case, and asked him for his opinions about his
prior counsel's filing.  Truskoski also responded back to Ford's
letter raising various concerns.  Thus, unlike counsel's conduct in
the *Holland* case, Mr. Truskoski communicated with his client.

Relying upon Ford's "learning disabled" diagnosis, Petitioner
suggests that Ford is absolved of any personal responsibility for
ensuring that his rights are protected.  Petitioner's Response at
18.  Petitioner submits that "a learning disabled Mr. Ford was not
and is not equipped to deal with the intricacies of federal habeas
law." *Id*. at 19.  The Court acknowledges that Ford is not trained

in federal habeas law. However, Petitioner's previous communications with the Florida Supreme Court and with Mr. Truskoski evidence Ford's ability to ensure that his rights are protected. Indeed, Petitioner acknowledges that in his *pro se* capacity, Ford sought and successfully obtained new post-conviction counsel, which resulted in Mr. Truskoski's appointment. *Id.* at 7, ¶10. Additionally, Petitioner communicated to Mr. Truskoski his "displeasure" with the initial Rule 3.851 motion, his desire to raise a "mental retardation claim" for the first time, and "errors he saw in both the brief and his case." *Id.* at 9, ¶12. Petitioner also was not hesitant in submitting another *pro se* pleading to the Florida Supreme Court to request "a ninety (90) day continuance" so that Mr. Truskoski could "raise the desired meritorious issues" on Ford's behalf. *Id.* at 10, ¶13. Consequently, the Court finds no evidence in the record to support Petitioner's suggestion that his learning disability rendered him incapable of exercising reasonable diligence.

Here, Petitioner has not shown that he ever expressed any dissatisfaction about the delay in the filing of his State post-conviction motion, or the instant Petition. Nor does Petitioner identify any action Ford undertook to expedite the filing of his federal Petition. Plainly put, Petitioner does not identify any affirmative actions taken by Ford to either inquire or ensure that his rights were being protected. Consequently, the Court finds no

evidence that Ford exercised reasonable diligence on his own behalf in this matter.

Based upon the foregoing, the Court finds that Petitioner has neither shown extraordinary circumstances nor reasonable diligence required to toll the statute of limitations. Consequently, the Court finds that Petitioner is not entitled to equitable tolling under the facts presented to the Court.

ACCORDINGLY it is hereby

**ORDERED and ADJUDGED:**

1. Petitioner's request for an evidentiary hearing, contained within his Response is **DENIED**.

2. The Court finds that Petitioner has not demonstrated either extraordinary circumstances or due diligence and thus is not entitled to equitable tolling.

3. The **Clerk** is directed to terminate any pending deadlines and motions and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this 13th day of January, 2012.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

SA: hmk

Copies: All Parties of Record
Clerk-U.S.C.A.

-25-